UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| NANCY M. LUTES,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>               Defendant. | No. ED CV 08-1575-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 31, 2008, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 13, 2008, and November 17, 2008. The parties filed a Joint Stipulation on June 30, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 10, 1950. [Administrative Record ("AR") at 31, 199.] She completed high school, some college, and some law school. [AR at 31, 63-66, 197, 258-59.] She has past relevant work experience as an animal health technician and a veterinary hospital manager. [AR at 32, 194, 213-15.]

Plaintiff filed her application for Disability Insurance Benefits[1] on April 22, 2005, alleging that she has been unable to work since February 1, 2000, due to, among other things, fibromyalgia and chronic fatigue. [AR at 180, 192-201.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 112-24.] A hearing was held on April 18, 2007, at which plaintiff appeared with counsel and testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 15, 27-103.] On September 6, 2007, the ALJ determined that plaintiff was not disabled. [AR at 12-26.] When the Appeals Council denied plaintiff's request for review of the hearing decision on August 29, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] The ALJ's decision only reflects that plaintiff applied for Disability Insurance Benefits [AR at 15, 26]; however, plaintiff in the Joint Stipulation asserts that she is also seeking Supplemental Security Income payments. [Joint Stipulation ("JS") at 2.]

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff did not engage in any substantial gainful activity from February 1, 2000, the alleged onset date of disability, to March 31, 2000, the date that she was last insured for Disability Insurance Benefits purposes. [AR at 17.]  At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "disc protrusion and degenerative changes at C6-7;" "disc protrusion, disc space narrowing and desiccation at L5-S1;" "left temporomandibular joint dysfunction, status-post two surgical repairs and dental reconstruction;" and "chronic headaches."  [AR at 18-19.]  The ALJ determined that plaintiff had not established that she had fibromyalgia prior to her date last insured.  Thus, the ALJ concluded that fibromyalgia was not one of plaintiff's severe impairments.[2]  [AR at 18.]  At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.

---

[2] To be eligible for Disability Insurance Benefits, plaintiff's disabling conditions must have commenced during the period that she was insured for such benefits. 42 U.S.C. §§ 423(a), (c). See Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1459 (9th Cir. 1995) ("the individual must be insured at the time that the individual suffers from the disability in order to receive benefit payments."). Here, plaintiff had to show that her alleged impairments commenced before March 31, 2000.  [AR at 17, 199.]

[AR at 19.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] "to perform a range of medium work, lifting and carrying 50 pounds occasionally and 25 pounds frequently, and sitting, standing, and walking without significant limitation." [AR at 19-23.] However, he found that she cannot climb ropes, ladders, or scaffolds, and cannot perform jobs requiring exposure to loud sounds, bright lights, or workplace hazards like "dangerous machinery and unprotected heights." [Id.] At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work [AR at 23-24], as well as other jobs existing in significant numbers in the national economy. [AR at 24-25.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 26.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly (1) rejected plaintiff's credibility, (2) weighed the treating physicians' opinions, and (3) determined that plaintiff can perform her past relevant work. [JS at 3-9, 13-16, 20-23, 25.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

In January 1995, while working at an animal hospital, plaintiff was attacked by a German shepherd that hit her in the face and caused the back of her head to hit a nearby wall. [AR at 37-38, 287, 309, 350.] Plaintiff suffered jaw, neck, and lower back pain and experienced migraine headaches that were more frequent and severe than the migraines she had before the attack. [AR at 287, 308-09, 327-28.] She was diagnosed with, among other injuries, cervical and lumbar disc herniation with radiculopathy, abnormal nerve conduction, thoracic strain, left temporomandibular joint ("TMJ") syndrome, facial myalgia, and depression. [AR at 277, 279-81, 285-86, 289, 295, 350-51.] Plaintiff's medical records show that during the years following the dog attack, she tried several prescription medications to manage her migraine headaches, underwent TMJ surgeries,

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

had additional orthodontia work, and had a series of epidural injections. [AR at 294, 327-28, 342-46, 349-58, 405-14.] At the hearing, plaintiff testified that in 1998 or 1999, she began experiencing additional pain symptoms that were eventually diagnosed as fibromyalgia in 2002. [AR at 47-49.] Plaintiff testified that her fibromyalgia symptoms "can be just debilitating pain. . . all over. It feels like a horrible case of the flu." [AR at 49.] She explained that before she was diagnosed with fibromyalgia, Dr. Richard A. Spitzer, one of her treating physicians, thought that her symptoms might be attributable to carpal tunnel syndrome, but he later thought she might have fibromyalgia. [AR at 47-48.]

Also at the hearing, the ALJ elicited testimony from a medical expert, Dr. David G. Brown, who testified that he did not see anything in the medical evidence, including in Dr. Spitzer's notes, establishing that plaintiff had fibromyalgia prior to March 31, 2000, the date she was last insured for Disability Insurance Benefits. [AR at 69-71.] Since he found that her fibromyalgia had not been established between 1995 and March 2000, he opined that she did not have any "totally disabling" conditions during that time period that would meet the Listing. [AR at 73-74.] However, he stated that plaintiff's diagnosed medical conditions, including her fibromyalgia, might account for her subjective limitations and pain-related symptoms <u>after</u> the date she was last insured. [AR at 76-78.]

In the decision, the ALJ rejected plaintiff's assertion that she experienced fibromyalgia symptoms prior to the date she was last insured for Disability Insurance Benefits. [AR at 18.] Citing Dr. Brown's testimony, the ALJ concluded that plaintiff's medical records "did not establish that her fibromyalgia symptoms were present" prior to March 31, 2000. [<u>Id.</u>] Instead, the ALJ found "that her symptoms [during that time frame] were more likely attributable to pre-existing conditions affecting her back, neck, and jaw." [<u>Id.</u>] As explained below, in reaching that conclusion, the ALJ effectively rejected Dr. Spitzer's contradictory medical opinion. Later in the opinion, however, the ALJ relied on the same medical opinion from Dr. Spitzer in finding that plaintiff's orthopedic impairments are not disabling. [AR at 20.] The ALJ's consideration and partial rejection of Dr. Spitzer's medical opinion was improper.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ is required to provide an explicit explanation, supported by evidence in the record, of the weight given to treating physicians' medical opinions. 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-2p[4] ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Where a treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

In concluding that prior to her date last insured, plaintiff's pain symptoms were attributable to her orthopedic conditions, rather than fibromyalgia, the ALJ failed to properly reject Dr. Spitzer's contradictory findings. In 1998 and 1999, Dr. Spitzer found that plaintiff's pain symptoms were not attributable to her orthopedic injuries because medical tests established that those injuries had improved. [AR at 335, 407-11.] On December 4, 1998, Dr. Spitzer noted that plaintiff continued to suffer from lower back pain and neck pain that "radiates into both of her arms and hands." [AR

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

at 410.] However, he asserted that an MRI of plaintiff's cervical spine "did not show any significant pathology" that would account for her pain. [Id.] He opined that she might have carpal tunnel syndrome because "[o]cassionally, patients with CTS have discomfort and pain not only in the hands and fingers but . . . even in the arms and up to the shoulder level." [Id.] Dr. Spitzer also noted that there was not a good explanation for plaintiff's lower back pain given the relatively unremarkable MRI results of her lumbosacral spine. [AR at 410-11.] On January 15, 1999, Dr. Spitzer opined that plaintiff's electroneuromyographic examination was "completely normal," and revealed "no evidence of cervical radioculopathy, brachial plexopathy, polyneuropathy, or entrapment mononeuropathy." [AR at 335, 409.] On April 15,1999, Dr. Spitzer noted that plaintiff continued to experience "a great deal of musculoskeletal pain," including pain in her neck, shoulders, arms, and hands, but that the imaging studies did "not show[] any significant pathology . . . which would account for her discomfort." [AR at 407.] Dr. Spitzer concluded that "[s]he may have fibromyalgia syndrome, a diagnosis which is established really on the basis of clinical criteria and which is not likely to be revealed or confirmed by any sort of physiologic or radiologic procedure."[5] [AR at 408.] On November 8, 2000, Dr. Spitzer again noted plaintiff's lower back and musculoskeletal pain. [AR at 405-06.] Two years later, plaintiff was diagnosed with fibromyalgia by Dr. Massoud Soleimani, and she has since received regular fibromyalgia treatment from him. [AR at 369-95.]

In the decision, the ALJ acknowledged that plaintiff's medical records show that she had musculoskeletal pain and that Dr. Spitzer asserted that she "may" have had fibromyalgia prior to

---

[5] Dr. Spitzer's statement in this regard is consistent with several circuit court decisions recognizing that fibromyalgia cannot be diagnosed by using diagnostic tests. See Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms."); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (the symptoms associated with fibromyalgia are entirely subjective and "[t]here are no laboratory tests for the presence or severity of fibromyalgia") (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)); Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003) (a fibromyalgia "[d]iagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests"); Green-Younger v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003) ("there are no objective tests which can conclusively confirm the disease [of fibromyalgia]").

March 31, 2000. [AR at 18, 407-08.] Nonetheless, contrary to Dr. Spitzer's medical opinion, the ALJ concluded that the medical evidence indicated that plaintiff's pain symptoms prior to March 31, 2000, were attributable to her orthopedic conditions, not fibromyalgia. [AR at 18.] Specifically, the ALJ asserted that plaintiff's symptoms "largely mirror[] what one would expect of someone with established neck, back, and jaw impairments," and that her symptoms were "more likely attributable" to those conditions than fibromyalgia. [AR at 18.]

The ALJ failed to properly weigh and provide explicit reasons supported by substantial evidence for rejecting Dr. Spitzer's opinion that plaintiff's pain in 1998 and 1999 was not linked to her spinal injuries and that she might have suffered from fibromyalgia prior to her date last insured. To properly reject Dr. Spitzer's findings, the ALJ was required to "do more than offer his conclusions. He [was required to] set forth his own interpretations and explain why they, rather than the doctors', [were] correct." Orn, 495 F.3d at 632. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects"). Here, the ALJ failed to provide *any* explicit reasons[6] for effectively rejecting Dr. Spitzer's opinion that plaintiff's pain was not attributable to her orthopedic injuries and that she might have fibromyalgia. "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from

---

[6] In concluding that the medical evidence did not indicate that plaintiff had fibromyalgia prior to her date last insured, the ALJ noted that until 2002, plaintiff received no follow-up referrals or examinations for fibromyalgia and no other doctor even speculated that plaintiff had fibromyalgia. [AR at 18.] To the extent that the ALJ implicitly concluded that Dr. Spitzer's opinion was inconsistent with the other medical evidence, this finding, by itself, was not an adequate basis for the ALJ to reject Dr. Spitzer's opinion. The ALJ may only reject a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Here, as the ALJ did not offer any explicit, let alone legitimate, reasons for rejecting Dr. Spitzer's opinion, his rejection was inadequate.

9

the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (citing King v. Califano, 615 F.2d 1018 (4th Cir. 1980)); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence") (citation omitted).[7]

Dr. Brown's testimony highlights the significance of Dr. Spitzer's opinion that plaintiff's pain symptoms might have been attributable to fibromyalgia prior to March 31, 2000. Dr. Brown testified that he knew Dr. Spitzer as a colleague and that "Dr. Spitzer is pretty well versed on fibromyalgia patients." [AR 69-70.] Dr. Brown further testified that plaintiff's diagnosed fibromyalgia might account for her subjective limitations after she was last insured for Disability Insurance Benefits. [AR at 76-78.] By implication, Dr. Brown's testimony suggests that if the medical evidence shows that plaintiff had fibromyalgia prior to her date last insured, then a disability finding might be warranted in this case. In light of Dr. Brown's testimony bolstering Dr. Spitzer's fibromyalgia expertise and the implication that medical evidence showing plaintiff had fibromyalgia prior to March 2000 could impact the disability determination, the ALJ's failure to properly reject Dr. Spitzer's opinion warrants remand.

After effectively rejecting Dr. Spitzer's findings based on the presence of plaintiff's orthopedic conditions, the ALJ then expressly credited Dr. Spitzer's opinion that plaintiff's pain symptoms were not attributable to her orthopedic injuries. Specifically, in determining that plaintiff's cervical and lumbar spinal injuries are not disabling conditions, the ALJ relied on Dr. Spitzer's April 1999 finding that plaintiff's medical tests were normal and revealed no "radiculopathy, polyneuropathy, [or] neuropathy." [AR at 20, 407.] The ALJ is not permitted to selectively reference medical opinion evidence to support certain parts of his decision, while ignoring the evidence when it contradicts other parts of his decision. Gallant v. Heckler, 753 F.2d

---

[7] The ALJ apparently also rejected Dr. Spitzer's November 8, 2000, finding that plaintiff tested positive for pain symptoms when undergoing a leg straightening test. Specifically, the ALJ asserted that the test "raise[d] serious doubt as to whether these were truly 'positive'" results. [AR at 20, 405.] For the same reasons discussed herein, the ALJ also failed to properly weigh or reject this part of Dr. Spitzer's medical opinion concerning plaintiff's pain symptoms.

1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). Here, it was erroneous for the ALJ to effectively reject Dr. Spitzer's opinion in concluding that there was insufficient evidence that plaintiff had fibromyalgia prior to March 2000 (as her pain was attributable to her orthopedic conditions), only to later credit the same opinion when concluding that plaintiff's orthopedic conditions were not disabling. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted). The ALJ's decision is thus internally inconsistent. Since, without explanation, the ALJ both rejected and relied on Dr. Spitzer's findings in supporting different parts of his decision, remand is warranted.

The ALJ is directed to reconsider Dr. Spitzer's findings, and if necessary, to further develop the record and recontact Dr. Spitzer for clarification regarding the significance of his opinions concerning plaintiff's symptoms in 1998 and 1999.[8] If the ALJ ultimately rejects some or all of Dr. Spitzer's findings, he must premise the rejection on legally sufficient reasons. Because the result of this determination may impact the ALJ's assessment of plaintiff's credibility as well as her ability to return to her past relevant work -- or any work -- plaintiff's remaining issues will not be addressed at this time.

/

/

/

---

[8] On remand, the ALJ is also instructed to reconsider Dr. Clayton A. Varga's report from October 6, 1997, that plaintiff had "myofascial pain syndrome" and "myofascial trigger points in the cervical paraspinous muscles" that make her headaches worse and that cause pain to radiate to her face. [AR at 329.] The ALJ should expressly consider whether Dr. Varga's findings support plaintiff's assertion that she had fibromyalgia prior to March 31, 2000. If necessary, the ALJ should recontact Dr. Varga to clarify the significance of his findings as they pertain to the onset date of plaintiff's fibromyalgia.

11

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reevaluate the treating physicians' medical opinions, in particular the findings of Dr. Spitzer, to determine whether the medical evidence establishes that plaintiff was disabled prior to March 31, 2000; 2) indicate the weight given to the various physicians' opinions contained in the record; 3) reconsider plaintiff's credibility and RFC in light of the re-examined medical evidence. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 23, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE